**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL FLEMING, | ) | CASE NO.:  5:06CV2200 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN ADAMS |
| | ) | |
| v. | ) | |
| | ) | |
| ENVIRITE OF OHIO, INC., et al. | ) | **ORDER AND DECISION** |
| | ) | [Resolving Docs. 23, 25, 37] |
| | ) | |
| Defendants. | ) | |
| | ) | |

### INTRODUCTION

This action is before the Court on the Motion for Summary Judgment of Defendant Envirite of Ohio, Inc., and the Partial Motion for Summary Judgment of Plaintiff Michael Fleming.  Each motion was timely opposed.  The Court has reviewed the parties' pleadings; motions, oppositions, and replies thereto; attached exhibits; and applicable law.  For the following reasons, Defendant's motion is GRANTED in part and DENIED in part, and Plaintiff's motion is DENIED.

### FACTS

Defendant Envirite of Ohio, Inc., is an Ohio corporation.  Plaintiff first worked for Envirite in 2001 as a temporary employee.  In August 2002, Envirite hired him as an at-will employee to work in the laboratory performing sample testing.  Plaintiff suffers from bipolar disorder.[1]  He claims that, within a few of months of being hired, his fellow

---

[1] Although Plaintiff's support for his assertion that he suffers from bipolar disorder is extremely weak and is based only upon unauthenticated medical records and his own affidavit, the court accepts this as his premise, and proceeds on the assumption that Plaintiff does suffer from bipolar disorder.  (See FN5).

1

employees began harassing him, which caused him to suffer emotional and mental distress.

In his complaint and in subsequent affidavits, Plaintiff alleged the following instances of harassment:  Several employees would bang on the doors and windows of the laboratory where Plaintiff worked, and would run away before he could see who they were.  Several employees called Plaintiff names, particularly "flamer," which were derogatory.  One supervisor, Mike McConnell, also called Plaintiff names such as "dickhead" and "asshole."  Although Plaintiff believes that both employees and management knew he was bipolar, McConnell and others referred to him as "crazy."

In addition to this conduct, Plaintiff also alleged that McConnell had physically harassed him by pushing a broomstick up his posterior and by grabbing his testicles, each a separate occurrence.[2]  On one occasion, unbeknownst to Plaintiff, an employee set a portable recording device in front of the intercom system and used it to play bird songs softly over the intercom.  Plaintiff alleged that when he heard the songs, he mentioned it to his co-workers, who told him he was crazy.  He later found the device by the intercom.  Plaintiff could not specify which employee orchestrated this act or why.  He simply asserted that it was done to harass him and to perpetuate the references by the employees to Plaintiff's "craziness."  Plaintiff further alleged that an employee once ate a banana in a suggestive manner and asked Plaintiff to engage in sex acts with him.

---

[2] Plaintiff also made two averments in his second affidavit, filed April 27, 2007 (Ex. A to Doc. 31) that are based upon hearsay:  First, that he had heard from other employees about instances of sexual misbehavior by McConnell; second, that Plaintiff had told his group therapy members about an unidentified employee's sexual behavior toward him, as reflected in his medical records, which were an attachment to his affidavit. The Court acknowledges that Defendant moved to strike these statements from the affidavit as hearsay, and to strike the medical records for lack of authentication and as hearsay.  The Court finds that the medical records are properly stricken, as Plaintiff has failed to provide any affidavit attesting to their authenticity. The statements, while hearsay, have been considered by the Court, but are unpersuasive on the issues of disability discrimination and harassment, as well as the intentional infliction of emotional distress and intentional tort by an employer claims.

During his deposition, Plaintiff indicated that he did not complain about the comments of McConnell and another employee, Tom Harshman, because he claimed he was afraid of retaliation. He admitted that he had not reported McConnell for the alleged physical harassment because, he said, McConnell was a supervisor and complaining about a supervisor's behavior would not accomplish anything. He also did not report the banana-eating incident because he had "heard" that the employee responsible was friends with the supervisor and Plaintiff was again afraid of retaliation. He did not recall whether he had complained about the door- and window-banging incidents. During a meeting with upper management, Plaintiff mentioned the birdsong incident, but other employees present at the meeting joked about it. Management did not pursue his report, and neither did Plaintiff. He claimed he did complain about employee name-calling to his supervisor, who told him to ignore it. In all, Plaintiff could only positively identify two reports to management: name-calling and the birdsong incident.

Plaintiff claimed that he had told other employees, particularly Donna Cross, about the broomstick and touching incidents with McConnell. However, Ms. Cross could not remember hearing about either incident, as notable as each was. She also could not remember hearing any of Plaintiff's other allegations except for other employees' calling him "flamer." She acknowledged that she understood the word to refer to homosexuality, though she thought the other employees used the word in place of Plaintiff's last name.

Throughout Plaintiff's at-will employment with Defendant, Plaintiff was in counseling with a psychologist and was under the care of a psychiatrist for his bipolar disorder. According to Plaintiff's deposition testimony, his psychiatrist, Dr. Malhotra, administered and adjusted several medications during that time to address his symptoms.

Plaintiff contends that, in August 2004, he suffered a nervous breakdown as a result of the harassment at work, and was ordered by his doctor to attend outpatient therapy at Aultman Hospital for two weeks so that she could monitor him and adjust his medication.  On August 13, 2004, he presented his acting supervisor[3] with a medical excuse providing the following information:  that Plaintiff had been under Dr. Malhotra's care; that he would be under her care and absent from work from August 13 to August 24, 2004; and that the date of his return to work was undetermined.[4]  Plaintiff says the supervisor responded to the note by telling Plaintiff not to worry and to do what he needed to do.  At no time did the supervisor mention leave under the Family Medical Leave Act ("FMLA"), nor did Defendant provide him with information regarding FMLA while he was on leave.

Plaintiff did not return to work on August 25, 2004, or the days immediately following, nor did he contact Defendant with information about his whereabouts.  On August 28, 2004, Defendant's Chief Financial Officer, Frank Johns, prepared a letter to Plaintiff in which he indicated that Defendant had attempted to contact him by phone for "the past several days."  Mr. Johns informed him that it was the company's policy to assume that any employee who does not call or come to work for three consecutive days has resigned without notice and that, therefore, Plaintiff's employment had been terminated.

Plaintiff averred in his affidavit filed March 27, 2007 (Doc. 25-1) that he had not received a phone call from Defendant between August 24 and August 28, 2004.  He also averred that he had never heard of the policy that an absent employee would be

---

[3] Mr. Dugan, Plaintiff's supervisor, was not at work when Plaintiff reported with his doctor's excuse.
[4] The note presented to Mr. Andrei actually read that the return to work date was "undermined."  The Court, as Plaintiff has suggested, understands this to mean that the return date was undetermined.

terminated after three days.  He further stated that he continued in the outpatient program until mid-September 2004.  Plaintiff's wife stated in her affidavit (Doc. 25-2) that she is disabled and cannot leave her home without assistance.  She had been home with her children while Plaintiff was attending outpatient therapy, and she never received a call from Defendant, nor did her caller ID record a call from Defendant during that time.

## LEGAL STANDARD

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c). The court is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986).  The court views the evidence of record and draws all reasonable inferences in the light most favorable to the nonmoving party.  *LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).

Summary judgment is appropriate if the party that bears the burden of proof at trial does not establish an essential element of its case.  *Tolton v. Am. Biodyne, Inc*., 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson*, 477 U.S. at 247-48 (emphasis in original).  A fact is "material" only if its resolution will affect the outcome of the lawsuit.

*Id.* at 248.  Summary judgment should be denied if "a reasonable jury could return a verdict for the nonmoving party."  *Id.*

## ANALYSIS

### 1.  Plaintiff's Disability Discrimination Claim

Plaintiff alleges that he was discriminated against and harassed by Defendant's agents and employees because of his bipolar disorder.  He brings this claim under state law.  Ohio Rev. Code § 4112.02, § 4112.99.

"The Ohio courts have held that the evidentiary standards and burdens of proof applicable to a claimed violation of Title VII of the Civil Rights Act of 1964 are likewise applicable in determining whether a violation of Ohio Rev. Code § 4112 has occurred.  Thus, the federal case law governing Title VII actions is generally applicable to cases involving alleged violations of Chapter 4112."  *Williams v. Ford Motor Co.*, 187 F.3d 533, 538 (6th Cir. 1999), citing *Little Forest Med. Ctr. v. Ohio Civil Rights Comm'n*, 575 N.E.2d 1164, 1167 (Ohio 1991).  *See also, Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 418 (6th Cir. 2004) ("Because neither party has argued that an action for handicap discrimination under Ohio law entails a different legal analysis than that for disability discrimination under the [Americans with Disabilities Act ("ADA")], and because Ohio case law tends to suggest that it entails the same legal analysis as that under the ADA, we will analyze plaintiff's state and federal discrimination claims under Ohio Revised Code § 4112 and the ADA, respectively, solely under the ADA.").

The ADA bars employers from "discriminat[ing] against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation,

6

job training, and other terms, conditions, and privileges of employment." 42 U.S.C. §
12112(a).  When a plaintiff bringing suit under the ADA attempts to demonstrate
employment discrimination by circumstantial evidence, a motion for summary judgment
must be considered in the context of the burden shifting framework set forth in
*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Under this framework, the
plaintiff must first make out a prima facie case of discrimination.  *See Gribcheck v.
Runyon*, 245 F.3d 547, 550 (6th Cir. 2001).  The burden then shifts to the defendant to
give a legitimate, non-discriminatory explanation for its actions regarding the plaintiff.
*Id.*  If the defendant satisfies its burden, the burden shifts back to the plaintiff to
demonstrate by a preponderance of the evidence that the proffered explanation is
pretextual.  *Id.*

    In order to make out a prima facie case of discrimination under the ADA, a
plaintiff must show "(1) that she or he is an individual with a disability, (2) who was
otherwise qualified to perform a job's requirements, with or without reasonable
accommodation, and (3) who was discriminated against solely because of the disability."
*Mahon v. Crowell*, 295 F.3d 585, 589 (6th Cir. 2002); s*ee also Monette v. Elec. Data Sys.
Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996).  "The term 'disability' means, with respect to
an individual:  (A) a physical or mental impairment that substantially limits one or more
of the major life activities of such individual; (B) a record of such an impairment; or (C)
being regarded as having such an impairment."  42 U.S.C. § 12102.  "A record of an
impairment means an individual has 'a history of, or has been misclassified as having, a
mental or physical impairment that substantially limits one or more major life activities.'"

*MX Group, Inc. v. City of Covington*, 293 F.3d 326, 339 (6th Cir. 2002), citing 28 C.F.R. § 35.104(3).

In each of these cases, a plaintiff must demonstrate that he has – or is perceived as having – an impairment that substantially limits one or more major life activities.  A person who is substantially limited is "[u]nable to perform a major life activity that the average person in the general population can perform" or is "[s]ignificantly restricted as to the condition, manner or duration under which [he or she] can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity."  29 C.F.R. § 1630.2(j).  Major life activities are defined as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."  29 C.F.R. § 1630.2(i).

Plaintiff has not specified what particular major activities he considers himself significantly restricted in or incapable of performing, but the court infers that he claims to be incapable of working.  A substantial limitation in the ability to work means that a person is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities."  29 C.F.R. § 1630.2((j)(3)  However, "[t]he inability to perform a single particular job does not constitute a substantial limitation in the major life activity of working."  *Id.*

Plaintiff contends that bipolar disorder is accepted as a disability under Ohio law, in support of which contention he cites *Swanson v. Univ. of Cincinnati*, 268 F.3d 307 (6th Cir. 2001).  In *Swanson*, a medical student claimed that he was discharged from his

8

residency program on the basis of his depression, which had caused his performance evaluation scores to slip because he was unable to concentrate on the required tasks or to engage and communicate with those around him.  The *Swanson* plaintiff never claimed to be bipolar, but he did claim that his depression caused him to have difficulty "sleeping, concentrating, communicating, and working."  *Id.* at 314.  The district court had found that "major depression is a mental impairment."  *Id.*  The appellate court held, however, that the plaintiff was still required to demonstrate that his condition resulted in a substantial limitation of the functions recognized as major life activities, which would mean he was unable to perform them or was significantly restricted in performing them. *Id.* at 315.  The court concluded that, while the evidence showed that the plaintiff was impaired in his sleep and ability to communicate, he was not substantially limited, and therefore his depression did not constitute a disability.  *Id.* at 316.  The *Swanson* court also noted that the plaintiff's conditions improved markedly when he was medicated.  *Id.*

*Swanson* does not stand for the proposition that bipolar disorder is a disability as a matter of law, and Plaintiff has not demonstrated that his bipolar disorder substantially limited him in any major life activity.  By his own testimony, he reported to work every day and performed his job to the best of his abilities, despite the distractions caused by his co-workers.  He has demonstrated no task or occupation, leisure or otherwise, that his mental condition has precluded him from participating in or completing.[5]  Allegations that he did not enjoy spending time with his wife and family or that he felt harassed are

---

[5] While he does claim that he suffered a nervous breakdown, he has provided no satisfactory evidence for the record that such a breakdown occurred.  The Court declines to consider Plaintiff's medical records under Fed. R. Civ. P. 56, which requires that papers attached to affidavits be "sworn or certified," which Plaintiff's medical records are not.  Even if the medical records were authenticated, they do not establish that Plaintiff suffers from a disabling condition.  If anything, they demonstrate that Plaintiff suffered an increase of symptoms that, with medication and counseling, resolved.  The case law to which Plaintiff has cited, namely *Swanson*, indicates that resolution of symptoms subsequent to treatment does not support a plaintiff's claim that he suffers from a disability.  *Swanson*, 268 F.3d at 316.

not sufficient to demonstrate a disability.  None of Plaintiff's allegations place him so far outside the norm that he cannot perform jobs that others could perform.  Furthermore, Plaintiff testified in his deposition that, after he had undergone treatment for his psychological problems, he obtained new employment in which he has taken on extra duties of a managerial nature.

Furthermore, assuming *arguendo* that he had supported his claim of a disability, Plaintiff has not shown that his alleged ill-treatment while in Defendant's employ and his ultimate termination were in any way based *solely* upon that disability.  *See Mahon*, 295 F.3d at 589.  He has made a series of tangential assertions that Defendant knew of his medications and his counseling schedule because Defendant was a self-insured employer. He has further alleged that Defendant did not appreciate paying Plaintiff's medical bills because his wife had received an expensive operation.  If anything, Plaintiff has defeated his own argument by drawing attention to reasons for his termination other than his disability, legitimate or not.

Plaintiff has failed to support his disability claim with evidence that comports with Fed. R. Civ. P. 56(e).  Furthermore, he has not provided any evidence to satisfy the third element under the ADA, namely that he was discriminated against solely because of his alleged disability.  Defendant's motion for summary judgment is granted with respect to Plaintiff's claim of disability discrimination.

## 2. Plaintiff's Hostile Work Environment Claim

Plaintiff claims that the alleged harassing conduct of his co-workers created a hostile work environment.  He includes in this claim allegations against both his co-workers and Mr. McConnell, who was a supervisor, though apparently not Plaintiff's

supervisor.  Plaintiff brings this claim separately from his disability discrimination claim but under the same provision of state law, namely Ohio Rev. Code 4112.02(A).  *See Hampel v. Food Ingredients Specialties, Inc.*, 729 N.E.2d 726, 732 (Ohio 2000) ("[A] plaintiff may establish a violation of R.C. 4112.02(A)'s prohibition of discrimination 'because of * * * [disability]' by proving either of two types of . . . harassment: (1) 'quid pro quo' harassment, i.e., harassment that is directly linked to the grant or denial of a tangible economic benefit, or (2) 'hostile environment' harassment, i.e., harassment that, while not affecting economic benefits, has the purpose or effect of creating a hostile or abusive working environment.").

"Hostile environment" harassment is "harassment that, while not affecting economic benefits, has the purpose or effect of creating a hostile or abusive working environment."  *Corrado v. Warren-Trumbull County Public Library*, 2006-Ohio-4661, at ¶ 51 (Ohio App. Ct. 2006).  To prevail on a claim of hostile environment harassment involving a disability, a plaintiff must prove the following:

> (1) That the harassment was unwelcome, (2) that the harassment was based on [his] disability, (3) that the harassing conduct was sufficiently severe or pervasive to affect the 'terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment,' and (4) that either the harassment was committed by a supervisor, or the employer, through its agents or supervisory personnel, knew or should have known of the harassment and failed to take immediate and appropriate corrective action.

*Id.* at ¶ 52-53 (internal quotations omitted).

As noted above in the discussion of Plaintiff's disability discrimination claim, Plaintiff has failed to demonstrate that he has a disability.  Therefore, he cannot satisfy the second requirement of a hostile environment claim.  For that reason, this claim must fail as a matter of law.

Assuming *arguendo* that Plaintiff could support his claim of a disability, he has not provided evidence that demonstrates "severe and pervasive" harassment.  In a claim of harassment or discrimination, a court must consider the totality of the circumstances rather than isolated and discreet instances of harassment.  The Supreme Court provided the following considerations for examining a harassment or hostile environment claim:

> The frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's performance. The effect on the employee's psychological well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive. But while psychological harm, like any other relevant factor, may be taken into account, no single factor is required.

*Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 23 (1993).  "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."  *Randolph v. Ohio Dept. of Youth Svcs.*, 453 F.3d 724, 733 (6th Cir. 2006), quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (internal quotation marks and citation omitted).

During his deposition, Plaintiff was unable to point to more than a small handful of incidents that he had reported to his supervisors, and those were instances of simple name-calling and the bird song incident.  He did allege in his affidavit and in his deposition that other harassing conduct beyond what he reported had been directed at him.  The Sixth Circuit has suggested that the question of the severity and pervasiveness of harassing conduct is "quintessentially a question of fact." *Jordan v. City of Cleveland*, 464 F.3d 584, 597 (6th Cir. 2006), quoting *O'Shea v. Yellow Tech. Svcs.*, 185 F.3d 1093, 1098 (10th Cir. 1999).  However, mere allegations of harassment are insufficient to allow Plaintiff's claims to survive summary judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("[S]ufficient evidence supporting the claimed factual dispute

12

[must] be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.").   Plaintiff was unable to produce any support for these additional allegations, either in the form of co-worker corroboration (even from those co-workers he expressly named as having heard about the incidents) or in the form of complaints lodged with his supervisors.

As Plaintiff has failed to demonstrate that he has a disability, and has failed to provide any evidence to the court to support his allegations such that he could make out a claim of "severe and pervasive" harassment, the court finds that he has not satisfied his burden on summary judgment.  Defendant's motion for summary judgment on Plaintiff's hostile work environment claim is granted.

**3.      Plaintiff's Claim of Intentional Infliction of Emotional Distress**

Plaintiff next alleges that Defendant knowingly and intentionally caused him emotional distress during his employment and as a result of his termination.  He claims that Defendant's refusal to remove him from the proximity of those who allegedly harassed him, and his subsequent termination, resulted in mental and emotional distress.

Under Ohio law, a plaintiff claiming intentional infliction of emotional distress must show that "(1) the defendant intended to cause emotional distress or knew or should have known that its conduct would result in serious emotional distress to the plaintiff; (2) defendant's conduct was outrageous and extreme and beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community; (3) defendant's conduct was the proximate cause of plaintiff's psychic injury; and (4) plaintiff's emotional distress was serious and of such a nature that no reasonable person could be expected to endure it."  *Ekunsumi v. Cincinnati Restoration,*

13

*Inc.*, 698 N.E.2d 503, 506 (Ohio Ct. App. 1997).  See also, *Yeager v. Local Union 20*, 453 N.E.2d 666 (Ohio 1983).

Plaintiff has in no way demonstrated that Defendant engaged in outrageous and extreme conduct.  As discussed above, he has failed to substantiate or support his allegations of harassment with any evidence beyond his own affidavit and allegations. Even if all of his allegations were true, they would not constitute conduct that was "outrageous and extreme beyond all possible bounds of decency," nor would the actions of Defendant's employees be considered "utterly intolerable in a civilized community." *Ekunsumi*, 698 N.E.2d at 506.

Moreover, Plaintiff has not provided evidence beyond his own affidavit and deposition that he suffered emotional distress that was "serious and of such a nature that no reasonable person could be expected to endure it."  *Id*.  The medical records he has submitted were not authenticated (See FN 5, *supra*), and therefore his claim of a nervous breakdown has not been substantiated.  While Ohio law does not require that a plaintiff present expert medical testimony to support a claim of intentional infliction of emotional distress, it does require that a plaintiff provide "evidence beyond [his or her] own testimony that [he or she] had suffered severe emotional distress."  *Buckman-Pierson v. Brannon*, 822 N.E.2d 830, 841 (Ohio Ct. App. 2004).  Plaintiff has not done so.  For the foregoing reasons, Defendant's motion for summary judgment on Plaintiff's claim of intentional infliction of emotional distress is granted.

**4.**     **Plaintiff's Claim of Intentional Tort by an Employer**

Plaintiff next alleges that Defendant's conduct with respect to him amounts to an intentional tort.  His basis for this claim is unclear, as he has provided few factual

14

allegations to support it.  As part of this claim, Plaintiff also states that Defendant retaliated against him for reporting the harassment, presumably by terminating his employment.  The latter part of this claim is discussed separately below.

This claim for an intentional tort by an employer is governed by the Ohio Supreme Court's decision in *Fyffe v. Jeno's, Inc.*, 570 N.E.2d 1108 (Ohio 1991), because it occurred prior to the enactment of the new Ohio statute governing employer intentional torts.  *See, e.g., Estate of Merrell v. M. Weingold & Co*., 2007-Ohio-3070, FN 1 (Ohio Ct. App. 2007).  An employer intentional tort claim only arises in situations in which the employer's actions were so egregious that they constituted an intentional tort.  *Estate of Merrell*, at ¶ 19; *Stump v. Industrial Steeplejack Co.*, 661 N.E.2d 212, 217 (Ohio App. Ct. 1993).  A plaintiff must demonstrate the following in order to satisfy the intent element of an employer intentional tort claim:

> (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task.

*Fyffe*, 570 N.E.2d, paragraph one of the syllabus.  In addition, as with all tort claims, a plaintiff must be able to demonstrate that the damage he suffered was causally connected to the employer's breach.  *See, e.g., Eilerman v. Cargill, Inc.*, 195 Fed. Appx. 314, 318 (6th Cir. 2006), citing *Raines v. Rubbermaid, Inc.*, 678 N.E.2d 988, 991 (Ohio Ct. App. 1996).

First, Plaintiff has failed to identify in his Complaint what injuries resulted from Defendant's alleged actions.  Presumably, he intends to ascribe to Defendant his alleged psychological instability and depression.

Plaintiff provides few to no actual facts in his complaint that would support a claim that his employer committed a tort against him or that he was damaged.  To the extent that this claim is something other than a discrimination or harassment claim, which the court has already disposed of, Plaintiff needed to show a genuine issue of material fact on one of the elements of an intentional tort claim.  The factors set forth above from the *Fyffe* decision are required to support the intent element of this claim, which Plaintiff has not satisfied.  There is no evidence that the employer had knowledge of anything more than name-calling and the playing of bird songs, none of which would put an employer on notice that a dangerous situation existed.  Further, if Plaintiff intends to claim that his termination was part of this alleged intentional tort, this claim is also meritless.  A termination is not, in and of itself, a dangerous procedure, nor should an employer be required to perceive it as such.  Setting aside the question of whether Plaintiff's alleged injury was the result of workplace stress and his termination, which is questionable, he cannot succeed in satisfying even the first prong of the intent element. Defendants' motion for summary judgment on this claim is granted.

**5.     Plaintiff's FMLA claim**

Plaintiff next alleges that Defendant interfered with his rights under the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. (FMLA), in that Defendant failed to notify Plaintiff that he qualified for FMLA leave, and failed to post notice conspicuously

on the premises regarding the employees' rights under the FMLA.  Plaintiff has moved for summary judgment on this claim, as has Defendant.

"The FMLA affords an eligible employee up to twelve weeks of leave within a twelve month period when the employee suffers from 'a serious health condition that makes the employee unable to perform the functions of . . . [his] position,' among other qualifying reasons."  *Brenneman v. Medcentral Health Sys.*, 366 F.3d 412, 420 (6th Cir. 2004), citing 29 U.S.C. § 2612(a)(1)(D).  "The term 'serious health condition' signifies 'an illness, injury, impairment, or physical or mental condition that involves . . . (A) inpatient care in a hospital, hospice, or residential medical care facility or (B) continuing treatment by a health care provider."  *Brenneman*, 366 F.3d at 420-21, citing 29 U.S.C. § 2611(11).  *See also* 29 C.F.R. § 825.114 (defining "inpatient care in a hospital, hospice, or residential medical care facility" and "continuing treatment by a health care provider").  "29 C.F.R. § 825.114(a)(2)(iii) provides that a 'serious health condition involving continuing treatment by a health care provider includes . . . any period of incapacity or treatment for such incapacity due to a chronic serious health condition.'" *Brenneman*, 366 F.3d at 421.

"It is unlawful 'for any employer to interfere with, restrain, or deny the exercise of or attempt to exercise, any right provided under [the FMLA].'"  *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005), quoting 29 U.S.C. § 2615(a)(1).  "Employers who violate § 2615 are 'liable to any eligible employee affected' for damages and appropriate equitable relief."  *Walton*, 424 F.3d at 485, citing 29 U.S.C. § 2617(a)(1).

An employee who claims employer interference with his rights under the FMLA must prove that "(1) he is an 'eligible employee,' 29 U.S.C. § 2611(2); (2) the defendant

is an 'employer,' 29 U.S.C. § 2611(4); (3) the employee was entitled to leave under the FMLA, 29 U.S.C. § 2612(a)(1); (4) the employee gave the employer notice of his intention to take leave, 29 U.S.C. § 2612(e)(1); and (5) the employer denied the employee FMLA benefits to which he was entitled." *Cavin v. Honda of Am. Mfg. Inc.*, 346 F.3d 713, 719 (6th Cir. 2003); *see also Walton*, 424 F.3d at 485.

In order for an employee to take advantage of FMLA leave for a foreseeable absence, he must provide the employer with written notice in advance of that absence. 29 U.S.C. § 2612(e)(2). When, as here, the leave required by the employee is unforeseeable, the regulations under the FMLA say that "an employee should give notice to the employer of the need for FMLA leave as soon as practicable under the facts and circumstances of the particular case." *Walton*, 424 F.3d at 485, citing 29 C.F.R. § 825.303(a). "While the employee need not actually mention the FMLA by name, 'the critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." *Brohm v. JH Properties, Inc.*, 149 F.3d 517, 523 (6th Cir. 1998); *see* 29 U.S.C. § 2612(e)(2) (requiring employees to give 30 days' notice for foreseeable treatment of a serious health condition).

In this case, there is no dispute regarding Plaintiff's eligibility or whether he was entitled to FMLA leave. Further, it is undisputed that Plaintiff presented a note to his acting supervisor, and did so on the day he learned that leave would be necessary. The note indicated that he was under the care of a doctor, that he would need leave from work for a specified period of time, and that the date of his return to work was undetermined.

18

Defendant argues that Plaintiff was already aware of—or should have been aware of—his rights under the FMLA because there were FMLA informational posters in the break room and because Defendant had given him FMLA literature prior to an earlier surgery.  Because Plaintiff did not ask for leave on the basis of that knowledge, Defendant contends he did not qualify for it.  Moreover, Defendant claims that any rights Plaintiff would have had under the FMLA were lost when he failed to inform Defendant after August 24, 2004, that he would not be returning immediately.

Plaintiff counters that he was never informed that he qualified for FMLA leave for this particular absence, nor would he have known to ask because he was unaware of any postings on employees' FMLA rights at Defendant's facility.  Further, he argues that the medical excuse he provided was sufficient to put Defendant on notice that he qualified for FMLA leave, even if Plaintiff did not specifically request it, and Defendant should have informed him of his rights under the FMLA.

While Defendant does not dispute that it did not inform Plaintiff of his right to take FMLA leave when he presented his doctor's excuse, there is a question of fact regarding Defendant's policy for termination and whether its termination of Plaintiff actually amounted to interference with Plaintiff's protections under the FMLA.  Defendant contends that it had a policy of termination for any employee who did not appear for work and did not call for three consecutive days.  When Plaintiff did not return for work after the last date noted on his medical excuse, Defendant claims it made several unsuccessful attempts to contact him and then terminated him.

While the FMLA allows for an employer to require updates from an employee whose leave has extended beyond the original dates provided to the employer, that must

19

be the employer's policy.  29 C.F.R. § 825.309(a).  It is not at all clear that Defendant had

any such policy as it related to FMLA leave, nor is it clear that Plaintiff was made aware

of the policy, if it existed.  These are questions of fact that must be resolved in order to

decide Plaintiff's FMLA interference claim.  Therefore, both Plaintiff's and Defendant's

motions for summary judgment on this claim are denied.

**6.      Plaintiff's Retaliation Claim**

Plaintiff did not explicitly state a retaliation claim in his First Amended

Complaint.  In the context of his claim of "Intentional Tort by Employer," Plaintiff

alleges that Defendant retaliated against him for reporting employees' harassment of him

and that those retaliatory actions were a violation of Ohio Rev. Code § 4112.02 and

4112.99.  However, in its brief in support of its Motion for Summary Judgment,

Defendants argue that Plaintiff's retaliation claim should fail.  Plaintiff embraces this

claim in his Brief in Opposition to Defendant's Motion for Summary Judgment,

providing reasons under Ohio Rev. Code 4112.02 that his retaliation claim should

succeed, despite the fact that he made no such claim in the First Amended Complaint.

Given the liberality of the pleading requirements, the court will proceed as if a retaliation

claim had been made by Plaintiff.

Under Ohio law, a claim of retaliation is actually a claim of discrimination

pursuant to Ohio Rev. Code 4112.02(I), which provides that it is unlawful discriminatory

practice

> [f]or any person to discriminate in any manner against any other person
> because that person has opposed any unlawful discriminatory practice
> defined in this section or because that person has made a charge, testified,
> assisted, or participated in any manner in any investigation, proceeding, or
> hearing under sections 4112.02 to 4112.07 of the Revised Code.

Ohio Rev. Code § 4112.02(I).  *See Senu-Oke v. Bd. of Ed.*, 2005-Ohio-5239, at ¶ 43 (Ohio App. Ct. 2005).

The Ohio courts rely on federal case law in deciding cases of alleged employment retaliation and discrimination.  *Peterson v. Buckeye Steel Casings*, 729 N.E.2d 813, 821-22 (Ohio Ct. App. 1999), citing *Chandler v. Empire Chem., Inc., Midwest Rubber Custom Mixing Div.*, 650 N.E.2d 950, 954 (Ohio Ct. App. 1994).  A plaintiff alleging retaliatory discharge must prove the following:  "(1) that [he] engaged in protected activity; (2) that [he] was the subject of adverse employment action; and (3) that a causal link existed between the protected activity and the adverse action."  *Chandler*, 650 N.E.2d at 954.  Federal law has adopted the *McDonnell Douglas* burden-shifting framework in retaliation cases, in which the plaintiff must first make out a prima facie case of discrimination.  *Gribcheck*, 245 F.3d at 550.  The burden then shifts to the defendant to give a legitimate, non-discriminatory explanation for its actions regarding the plaintiff.  *Id.*  If the defendant satisfies its burden, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the proffered explanation is pretextual.  *Id.*

Defendant claims that it dismissed Plaintiff pursuant to a policy of termination after a failure to report to work or to call after a period of three days.  However, there is a factual question as to whether this policy existed at all, or in any form such that Plaintiff would be aware of it.  For those reasons, the court DENIES Defendant's motion for summary judgment on the retaliation claim.

**CONCLUSION**

Based upon the foregoing, the court GRANTS Defendant's motion for summary judgment on Plaintiff's claims of discrimination, hostile environment harassment, intentional infliction of emotional distress and employer intentional tort.  The court DENIES both Plaintiff's and Defendant's motions for summary judgment on Plaintiff's FMLA claim.  Finally, the court DENIES Defendant's motion for summary judgment on Plaintiff's claim of retaliation.


IT IS SO ORDERED


___September 10, 2007____                   __/s/ John R. Adams_____
DATE                                        JUDGE JOHN R. ADAMS
                                            UNITED STATES DISTRICT COURT